ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| MANAGEMENT CONSULTING PROFESSIONAL ALLIED, INC.<br><br>Parte Recurrente<br><br>v.<br><br>OFICINA DE PLANIFICACIÓN Y ORDENACIÓN TERRITORIAL - MUNICIPIO AUTÓNOMO DE SAN JUAN<br><br>Parte Recurrida | KLRA202400675 | *Revisión Judicial,* procedente de la Oficina de Planificación y Ordenación Territorial - Municipio Autónomo de San Juan<br><br>Caso Núm.: 21POT-00818ZO-MO<br><br>Sobre: Denegatoria a Solicitud Cambio de Calificación |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

## SENTENCIA EN RECONSIDERACIÓN

En San Juan, Puerto Rico, a 28 de febrero de 2025.

Compareció ante este Tribunal la parte recurrente, Management Consulting Professional Allied, Inc. (en adelante, "Management Consulting o "Recurrente"), mediante recurso de revisión judicial presentado el 6 de diciembre de 2024. Nos solicitó la revocación de la *Resolución Sustituto (en adelante,* la *"*Resolución*")* emitida por la Oficina de Planificación y Ordenación Territorial del Municipio Autónomo de San Juan (en adelante, "Oficina de Planificación") el 6 de noviembre de 2024, notificada y archivada en autos en igual fecha. Mediante el referido dictamen, la Oficina de Planificación denegó la "**Solicitud de Enmienda al Mapa de Calificación**" interpuesta por la Recurrente.

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida.

## I.

El caso de autos se originó el 20 de mayo de 2021, cuando Management Consulting presentó ante la Oficina de Planificación una "**Solicitud de Enmienda al Mapa de Calificación**" identificada con el número 21POT-00818ZO-MO. En específico, peticionó enmendar la Hoja Número 11-D del Mapa de Calificación de

Suelos del Plan Territorial del Municipio Autónomo de San Juan (en adelante, "Mapa de Calificación"), con la intención de recalificar el predio sito en la Calle Carite Bloque A #2 de la Urbanización Crown Hills, en el barrio Monacillos del Municipio de San Juan. Particularmente, dicha solicitud de recalificación consistió en cambiar la calificación de distrito residencial tres del referido solar a una calificación de distrito comercial liviano.

Más adelante, el 15 de julio de 2021, la Oficina de Planificación publicó en un periódico de circulación general un "Aviso Público" en el que se especificó que se llevarían a cabo vistas públicas, los días 3 y 4 de agosto de 2021, con el propósito de considerar, entre otras cosas, la petición de cambio de calificación de suelo interpuesta por el Recurrente. Ese mismo día, la Oficina de Planificación le notificó sobre ello a Management Consulting y le solicitó que incluyera un rótulo de presentación sobre el terreno de forma paralela a la vía pública. Al día siguiente, el 16 de julio de 2021, Management Consulting presentó evidencia de haber colocado el referido rótulo de presentación.

Finalmente, el 4 de agosto de 2021, se celebró la vista pública sobre la solicitud de cambio de calificación presentada por el Recurrente, la cual fue presidida por el Oficial Examinador, el Lcdo. José Manuel Fullana Hernández (en adelante, "Lcdo. Fullana Hernández"), y la Sra. Mirella Rosa, Oficial de la Oficina de Planificación. A esos efectos, el 7 de septiembre de 2021, el Lcdo. Fullana Hernández rindió su "**Informe del Oficial Examinador**", en el cual estableció diecinueve (19) determinaciones de hechos y recomendó favorablemente la recalificación solicitada.

Así las cosas, el 10 de septiembre de 2024, la Oficina de Planificación remitió una determinación a Management Consulting, la cual fue depositada en el correo el 13 de septiembre de 2024, mediante la cual denegó la solicitud de cambio de calificación del suelo en controversia. En específico, expresó lo siguiente:

> Saludos cordiales. Por la presente le informamos que hemos concluido la evaluación correspondiente a su solicitud de cambio de calificación bajo el caso de referencia para un solar con cabida de 480.00 metros cuadrados que radica en la calle Carite Núm. A-2, Urb. Crown Hills en el barrio Monacillo del término municipal de San Juan, con numero de catastro **114-010-454-38**, según la

**Hoja 11-D** de los Mapas de Calificación de Suelo del Municipio Autónomo de San Juan.

El mismo ha sido considerado **no favorable** para el cambio solicitado de un distrito R-3 a un distrito C-L, porque el mismo crearía presión indebida, menoscabo de la infraestructura y establecería un precedente hacia el área residencial en comunidades gravadas por cláusulas restrictivas de servidumbres en equidad; provocando un efecto adverso en la calidad de vida de los residentes y en los distritos donde ubica, los cuales fueron diseñados para uso residencial.

De acuerdo con la reglamentación vigente toda petición de enmienda que haya sido denegada deberá esperar un término de **cinco años** a partir de la fecha de esta notificación para poder radicar una nueva petición en el predio objeto de la solicitud. Cualquier duda o preguntas podrá comunicarse a nuestra Oficina al tel.: (787)480-2250 o mediante correo electrónico con la Sra. Mirella Rosa (mrosa01@sanjuan.pr).[1]

Inconforme con lo anteriormente resuelto, el 15 de octubre de 2024, el Recurrente acudió ante este Tribunal mediante un recurso de revisión judicial bajo el alfanumérico KLRA202400574, en el que alegó que la Oficina de Planificación erró al denegar la "**Solicitud de Enmienda al Mapa de Calificación**" sin formular las advertencias finales de rigor en el cuerpo de su comunicación, en violación de su derecho a un debido proceso de ley, las disposiciones de la Ley Núm. 75 de 24 de junio de 1975, *infra*, y la Ley Núm. 38-2017, *infra*.

Posteriormente, el 30 de octubre de 2024, el Municipio Autónomo de San Juan presentó un "**Escrito en Cumplimiento de Resolución de 16 de octubre de 2024, y en solicitud de desestimación por falta de jurisdicción por razón de academicidad**", mediante el cual sostuvo que la Oficina de Planificación omitió apercibir al Recurrente de su derecho a revisión judicial, el término disponible, el foro al cual recurrir y la fecha del archivo en autos de la determinación impugnada. De igual manera, solicitó la desestimación por academicidad, pues se aprestaría a renotificar su determinación, incluyendo dichos apercibimientos.

Así las cosas, el 7 de noviembre de 2024, emitimos *Sentencia* mediante la cual desestimamos el referido recurso de revisión judicial por el mismo haberse tornado académico. Posteriormente, Management Consulting compareció nuevamente ante esta Curia por medio del recurso de epígrafe, en el que señaló los siguientes errores:

---

[1] *Véase*, Apéndice del Recurso de Revisión Judicial, pág. 1 (énfasis en el original).

Primer Error:

"Erró la OPOTMASJ al denegar la solicitud de enmienda al Mapa de Calificación de Suelos del Plan de Ordenación Territorial del Municipio Autónomo de San Juan, identificada con el número 21POT-00818ZO-MO, sin formular advertencias finales adecuadas a la parte afectada por tal dictamen en violación al derecho a un debido proceso de ley, contemplado en el Articulo II, Sección 11, de la Constitución del E.L.A de P.R. y en las disposiciones de la Ley Núm. 75-1975, según enmendada, "Ley Orgánica de la Junta de Planificación" y Ley Núm. 38-2017, según enmendada, "Ley de Procedimiento Administrativo del Gobierno de Puerto Rico".

Segundo Error:

"Erró la OPOTMASJ durante el proceso de evaluación, adjudicación y notificación de la solicitud de enmienda al Mapa de Calificación de Suelos del Plan de Ordenación Territorial del Municipio Autónomo de San Juan, identificada con el número 21POT-00818ZO-MO en violación al derecho a un debido proceso de ley, contemplado en el Articulo II, Sección 11, de la Constitución del E.L.A. de P.R. y en las disposiciones de la Ley Núm. 75-1975, según enmendada, "Ley Orgánica de la Junta de Planificación" y Ley Núm. 38-2017, según enmendada, "Ley de Procedimiento Administrativo del Gobierno de Puerto Rico".

Tercer Error:

"Erró la OPOTMASJ al disponer de la Solicitud de Enmienda al Mapa de Calificación de Suelos del Plan Territorial del Municipio Autónomo de San Juan, identificada con el número 21POT-00818ZO-MO, mediante Resolución Sustituto con fecha de 6 de noviembre de 2024, la cual fue depositada en el correo el 7 de noviembre de 2024, sin tener jurisdicción sobre la misma, por no haber recibido el mandato de este Honorable Tribunal en el caso KLRA-2024-00574".

Cuarto Error:

"Erró la OPOTMASJ al denegar la solicitud de enmienda al Mapa de Calificación de Suelos del Plan de Ordenación Territorial del Municipio Autónomo de San Juan, identificada con el número 21 POT-00818ZO-MO, utilizando como fundamento meros argumentos, contrarios a: la evidencia presentada y que obra en el expediente y a las Determinaciones de Hechos, Conclusiones de Derecho y Recomendación del oficial examinador."

Quinto Error:

"Erró la OPOTMASJ al denegar la solicitud de enmienda al Mapa de Calificación de Suelos del Plan de Ordenación Territorial del Municipio Autónomo de San Juan, identificada con el número 21POT-00818ZO-MO, pues dicha decisión causa que se mantenga una propiedad con una calificación / zonificación aislada o "spot zoning", a la inversa."

El 20 de febrero de 2025, y tras varios trámites a nivel apelativo, la Oficina de Planificación presentó su "**Alegato de la Parte Recurrida, Municipio Autónomo de San Juan**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver

## II.

## A.

El término jurisdicción ha sido definido como el poder y autoridad que poseen los tribunales y las agencias administrativas para considerar y decidir sobre las controversias ante su consideración. Cobra Acquisitions v. Municipio de Yabucoa *et al.*, 210 DPR 384, 394 (2022). Para adjudicar un caso, el tribunal o la agencia debe tener jurisdicción tanto sobre la materia en cuestión como sobre las partes en disputa. Adm. Terrenos v. Ponce Bayland, 207 DPR 586, 600 (2021). Por ello, nuestro Tribunal Supremo ha sostenido reiteradamente que los tribunales y las agencias administrativas debemos ser celosos guardianes de su jurisdicción y que los asuntos relacionados con esta son privilegiados y deben atenderse de manera preferente. Torres Alvarado v. Madera Atiles, 202 DPR 495, 500 (2019).

La ausencia de jurisdicción conlleva las siguientes consecuencias inexorablemente fatales: (1) la falta de jurisdicción no es susceptible de ser subsanada, (2) las partes no pueden voluntariamente otorgarle jurisdicción sobre la materia a un tribunal o a una agencia, ni estos pueden abrogársela, (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos, (4) los tribunales y las agencias tienen el ineludible deber de auscultar su propia jurisdicción, (5) los tribunales apelativos, además, deberán examinar la jurisdicción del foro de donde procede el recurso y (6) el planteamiento de falta de jurisdicción sobre la materia puede presentarse en cualquier etapa del procedimiento. Allied Mgmt. Group. v. Oriental Bank, 204 DPR 374, 386 (2020). Por tanto, si se carece de jurisdicción, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia. Beltrán Cintrón et al. v. ELA et al., 204 DPR 89, 102 (2020).

En lo aquí concerniente, sabido es que los foros inferiores se encuentran impedidos de ejercer su jurisdicción para atender una controversia cuando no ha recibido el mandato de la determinación final emitida por este Tribunal respecto al recurso que se presente ante nuestra consideración. El mandato ha sido definido por nuestro Tribunal Supremo como "una orden de un tribunal superior a uno de inferior jerarquía, notificándole haber revisado el caso en apelación y enviándole

los términos de su sentencia". Pueblo v. Serrano Chang, 201 DPR 643, 650 (2018) (citando a Mejías *et al.* v. Carrasquillo *et al.*, 185 DPR 288, 300–301 (2012)). Es decir, es el mecanismo oficial mediante el cual un tribunal apelativo le comunica a un foro inferior la disposición de la sentencia o resolución objeto de revisión y le impone su cumplimiento. Íd. Su propósito consiste en asegurar que el foro inferior proceda de forma consecuente con los pronunciamientos del tribunal apelativo. Íd. En cuanto a la jurisdicción de los tribunales relacionada con el mandato, nuestro más alto foro ha expresado lo siguiente:

> El concepto *mandato* cobra especial relevancia en lo concerniente a los efectos de índole jurisdiccional que pueda tener su remisión al foro de origen. Según establecido en las disposiciones legales pertinentes, una vez el tribunal en alzada emite su determinación, y la misma adviene final y firme, se enviará el mandato correspondiente al foro recurrido. Es en ese momento que el recurso que estaba ante la consideración del foro revisor concluye para todos los fines legales, por lo que se entiende que no es hasta entonces que éste pierde jurisdicción en lo concerniente al asunto. Colón y otros v. Frito Lays, 186 DPR 135, 153 (2012).

**B.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021). En los casos de revisión judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". Rivera Concepción v. A.R.Pe, 152 DPR 116, 124 (2000).

La Sección 4.5 de la LPAU, dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en

evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, pueden ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**C.**

La Ley Núm. 75 de 24 de junio de 1975, según enmendada, conocida como "Ley Orgánica de la Junta de Planificación de Puerto Rico", 32 LPRA sec. 62 *et seq.* (en adelante, "Ley Núm. 75"), creó la Junta de Planificación, con el fin ulterior de proteger los intereses y el bienestar de la ciudadanía en general en el descargo de la política pública de planificación y zonificación. Dicho cuerpo estatuario le confiere a la referida entidad gubernamental la facultad de adoptar y aprobar distintos reglamentos, incluyendo el reglamento de zonificación, reglamento de lotificación, mapas de zonificación y las enmiendas a éstos. 23 LPRA sec. 62j. De conformidad con dicha potestad, el Artículo 16 de la precitada ley dispone que la

Junta de Planificación debe adoptar reglamentos que fijen el uso y desarrollo por zonas o distritos de los terrenos y edificios públicos y privados. 23 LPRA sec. 62o.

La zonificación es una de las herramientas conferidas por el legislador a la Junta para llevar a cabo sus "funciones dentro de una sociedad y un gobierno cada vez más complejos, un sistema abierto que confronta innumerables presiones como resultado de necesidades y aspiraciones conflictivas y que experimenta unos cambios sociales acelerados dentro de su escala reducida, escasez de terreno y recursos naturales, alta densidad poblacional y un ecosistema frágil". Ortiz, Gómez et al. v. J. Plan., 152 DPR 8, 16 (2000). En cuanto al proceso de planificación local de los municipios, el Artículo 24 del mencionado estatuto establece de manera explícita que la Junta de Planificación tiene la facultad de delegar la adopción de enmiendas a los mapas de zonificación a los ayuntamientos. 23 LPRA sec. 62w.

Particularmente, sobre los mapas de zonificación y sus enmiendas, el Tribunal Supremo ha establecido que:

> [R]epresentan la forma visual y práctica de instrumentar los reglamentos de zonificación y sus enmiendas. Su aprobación y enmiendas **no son actos de naturaleza adjudicativa, dirigidos a resolver una controversia en particular entre una o más personas, sino que son actos producto de los instrumentos con los cuales el Estado ha provisto a la Junta para reglamentar el uso de la tierra en Puerto Rico**, de manera que se logre un desarrollo integral y balanceado de nuestra sociedad. Luan Investment Corp. v. Román, 125 DPR 533, 547 (1990) (énfasis suplido).

Nótese, pues, que en este procedimiento no se adjudica una controversia, sino que se adopta una reglamentación. Es menester aclarar que este proceso de adoptar y enmendar mapas de zonificación se rige por las disposiciones de la referida Ley Núm. 75, supra, en la medida en que no estén en conflicto con la Ley Núm. 38 de 30 de junio de 2017, mejor conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", 3 LPRA sec. 9601 et seq (en adelante, "Ley Núm. 38- 2017"). Íd. Esto es, "[l]a adopción de reglas de zonificación, ya sea por una legislatura estatal o por las autoridades legislativas de un municipio [o, como en Puerto Rico, por la agencia administrativa], constituye un ejercicio del poder legislativo". Íd., pág. 545 (citando a Anderson, American Law of Zoning, 3d Sec. 2.01 (1986)).

En línea con lo anterior, el Artículo 27 de la Ley Núm. 75, *supra*, provee para la celebración de vista públicas durante la adopción y enmienda de los reglamentos y mapas de zonificación. Atinente a lo anterior, el Artículo 28 de la ley dispone que:

> Todos los reglamentos y las enmiendas a los mismos adoptados por la Junta y aprobados por el Gobernador salvo los reglamentos de emergencia o enmiendas a los reglamentos vigentes en casos de emergencia, autorizados por el Artículo 11, inciso (6) de esta ley (23 L.P.R.A. § 62j), regirán a los quince (15) días de su aprobación. Los reglamentos así aprobados se radicarán a la mayor brevedad en la Secretaría de Estado y en lugar de su publicación total, la Junta podrá dar aviso al público de que los reglamentos y las enmiendas a los mismos han sido aprobados publicando, para conocimiento de las personas interesadas, en uno o más periódicos de circulación general en Puerto Rico, una descripción en forma general de las disposiciones que mayormente interesen o afecten al público; Disponiéndose, que los Mapas de Zonificación que la Junta apruebe y adopte, formarán parte integral y regirán conjuntamente con el Reglamento de Zonificación, ya adoptado por la Junta; Disponiéndose, además, que los Mapas de Zonificación que adopte la Junta regirán después de firmados por el Gobernador a los quince (15) días, a contar de la fecha en que se inicie su exposición al público, en las Casas Alcaldías de los municipios afectados; Disponiéndose, además, que la Junta dará a conocer públicamente la adopción de los Mapas de Zonificación, la exposición de los mismos en las Casas Alcaldías correspondientes, y la existencia de los mismos en la Secretaría de la Junta, mediante la publicación de un anuncio por tres (3) días consecutivos en un periódico de circulación general en Puerto Rico.
>
> Las enmiendas que posteriormente apruebe la Junta a los Mapas de Zonificación, adoptados y firmados por el Gobernador, no introducirán cambios fundamentales al mapa vigente excepto con el propósito de instrumentar las recomendaciones del Plan de Uso de Terrenos y del Plan de Desarrollo Integral de Puerto Rico hasta donde éstos hayan sido aprobados. Estas enmiendas aprobadas por la Junta también serán llevadas al conocimiento del público mediante el procedimiento dispuesto en este Artículo para los Mapas de Zonificación; Disponiéndose, sin embargo, que en estos casos la publicación del anuncio en la prensa se hará una sola vez en un periódico de circulación general en Puerto Rico.
>
> Una vez aprobada una enmienda a un Mapa de Zonificación por la Junta, no será necesaria la aprobación y firma del Gobernador de dicha enmienda y la misma entrará en vigor a los quince (15) días de publicación en un periódico de circulación general en Puerto Rico. 23 LPRA sec. 63.

Ahora bien, el Artículo 32 (b) de la Ley Núm. 75, *supra*, dispone que las decisiones, acciones o resoluciones de la Junta de Planificación en el ejercicio de sus funciones cuasi legislativas, como la adopción, modificación o promulgación de reglamentos y mapas de zonificación, tendrán carácter definitivo. 32 LPRA sec. 63d**. No obstante, si la Junta incumple con los requisitos legales para llevar**

**a cabo estos procesos, se podrá presentar una impugnación ante el foro judicial**. Íd.

Por su parte, la sección 2.7 de la LPAU, *supra*, también contempla la revisión judicial para este tipo de actuación cuasi legislativa. En detalle, dispone lo siguiente:

> Cualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento de las disposiciones de esta Ley deberá iniciarse en el Tribunal de Apelaciones dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. La competencia sobre la acción corresponderá a la región judicial donde esté ubicado el domicilio del recurrente. 3 LPRA sec. 9617.

Es importante mencionar que existe discrepancia entre los preceptos de la Ley Núm. 75, *supra*, y la LPAU, respecto al foro donde deben recurrir las personas afectadas por una decisión adversa de una agencia administrativa. Por tanto, para armonizar dichos estatutos, nuestro Tribunal Supremo determinó en Montoto v. Lorie, Velasco, 145 DPR 30, 41 (1998) que, conforme a las disposiciones de la LPAU vigentes en aquel momento, el recurso apropiado para instar la referida acción lo era el de apelación ante el Tribunal Supremo. Al atemperar dichas disposiciones con la Sección 2.7 de la LPAU, *supra*, entendemos que el foro con jurisdicción para atender los recursos de revisión judicial relacionados a las enmiendas de mapas de zonificación lo es el Tribunal de Apelaciones.

Por último, el término zonificación aislada o *spot zoning* se refiere a aquellas enmiendas que no son cónsonas con los principios o esquemas generales de planificación, ya que favorecen intereses particulares sin brindarle la debida atención a los derechos de los propietarios de solares contiguos y al bienestar general de la sociedad. Asoc. Res. Park Side, Inc. v. J.P., 147 DPR 277, 291 (1998). Esto es, ocurre una zonificación aislada cuando un mapa de zonificación es modificando mediante la rezonificación de uno o varios terrenos o lotes para autorizar en ellos un uso diferente al establecido originalmente que resulta contradictorio con los usos de los terrenos de las áreas adyacentes. Íd. pág. 293. Dicha incongruencia, usualmente favorece a un grupo reducido de propietarios en perjuicio de los intereses de la comunidad. Íd. No obstante lo anterior, no toda rezonificación de un solar o propiedad que se aparte de los usos que han prevalecido en un área constituye una actuación inválida, puesto que para

realizar tal determinación es necesario examinar las características precisas del área rezonificada, a la luz del ordenamiento que rige en materia de zonificación.

**D.**

La Ley Núm. 161-2009, según enmendada, mejor conocida como "Ley para la Reforma del Proceso de Permisos de Puerto Rico" (en adelante, "Ley Núm. 161-2009"), fue promulgada con el objetivo de establecer el marco legal y administrativo aplicable a las solicitudes de evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico. Dicho estatuto busca facilitar y propiciar el desarrollo integral, social, económico y físico de Puerto Rico mediante la reforma de las estructuras que limitan nuestro potencial de progreso. Asimismo, como política pública de esta ley se reconoce que es "vital asegurar la transparencia, certeza, confiabilidad y agilización del proceso de evaluación para el otorgamiento o denegación de determinaciones finales y permisos, además de la emisión de recomendaciones". 23 LPRA sec. 9011 nota.

En lo aquí pertinente, el Artículo 2.5 de la Ley Núm. 161-2009, *supra*, establece que la Junta de Planificación es la encargada de evaluar los procesos de recalificación directa de solares y de emitir su determinación final. 23 LPRA sec. 9012d. No obstante, el Artículo 6.016 de la Ley Núm. 107-2020, según enmendada, mejor conocida como "Código Municipal de Puerto Rico" y el Convenio de Transferencia de Facultades sobre la Ordenación Territorial del Municipio de San Juan suscrito el 18 de agosto de 2021, le otorgan a la Oficina de Planificación y Ordenación Territorial del Municipio Autónomo de San Juan el poder de ejercer facultades de la Junta de Planificación de Puerto Rico y la Oficina de Gerencia de Permisos, incluyendo la autoridad para evaluar y tomar determinaciones en los cambios de calificación directos. 21 LPRA sec. 7866. Por su parte, el Artículo 18.6 de la Ley Núm. 161-2009, *supra*, dispone que en los procedimientos de recalificación y variaciones de uso se deben celebrar vistas públicas. 23 LPRA sec. 9018e.

A luz de los poderes conferidos en la Ley Núm. 161-2009, la Junta de Planificación aprobó el "Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios de la Junta de Planificación de 2020", Reglamento Núm. 9233 de 9 de diciembre

de 2020 (en adelante, "Reglamento Conjunto"), con el propósito de integrar y uniformar, de manera eficiente, a los demás entes gubernamentales responsables de la gestión de permisos como los municipios autónomos. Respecto al análisis de las solicitudes de cambio de calificación, establece que se requerirán recomendaciones a los municipios, a la Junta de Planificación o a las entidades gubernamentales concernidas, según corresponda, como parte del proceso de evaluación. Por último, dispone que, tras examinar la solicitud de cambio de calificación, la Junta de Planificación o el Municipio Autónomo con Jerarquía de la II a la III, según aplique, dictará una resolución que incluirá el acuerdo sobre la enmienda peticionada. Reglamento Núm. 9233, Sección 7.5.5.7.

**E.**

La notificación adecuada de las decisiones administrativas es parte del principio constitucional de que todo ciudadano ostenta un derecho a un debido proceso de ley. Colón Torres v. A.A.A., 143 DPR 119, 124 (1997). La notificación sirve un propósito lógico y sabio en la administración de la justicia, al proteger el derecho de la parte afectada a procurar la revisión judicial de un dictamen adverso. Mun. San Juan v. Plaza Las Américas, 169 DPR 310, 329 (2006); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 DPR 881, 889 (1993).

De igual manera, la notificación concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia y otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad de decidir si ejercen los remedios que la ley les reserva para impugnar la determinación. Asoc. Vec. Altamesa Este v. Municipio de San Juan, 140 DPR 24, 34 (1996). Ante ello, resulta indispensable que se notifique adecuadamente cualquier determinación de la agencia que afecte los intereses de una parte. Íd. Asimismo, la notificación adecuada supone la advertencia de lo siguiente: (1) derecho a solicitar reconsideración de la decisión tomada; (2) derecho a solicitar revisión judicial o juicio de *novo*, según sea el caso; y (3) los términos correspondientes para ejercitar dichos derechos. El incumplimiento con alguno de estos requisitos resulta en una notificación defectuosa. Maldonado v. Junta Planificación, 171 DPR 46, 57-58 (2007).

El deber de notificar a las partes una determinación administrativa de manera adecuada y completa no constituye un mero requisito. Olivo v. Srio. de Hacienda, 164 DPR 165, 178 (2005). Una notificación insuficiente puede traer consigo consecuencias adversas a la sana administración de la justicia, además de que puede demorar innecesariamente los procedimientos administrativos y, posteriormente, los judiciales. Íd. A la luz de lo anterior, se ha resuelto que, si una parte no es notificada de la determinación conforme a derecho, no se le pueden oponer los términos jurisdiccionales para recurrir de la misma. Comisión Ciudadanos v. G.P. Real Property, 173 DPR 998, 1015 (2008).

En fin, la correcta y oportuna notificación de una decisión final, sea judicial o administrativa, es un requisito *sine qua non* para un ordenado sistema judicial. De lo contrario, se crearía una incertidumbre sobre cuándo comienzan los términos para incoar los remedios *post-dictamen*, entre otras graves consecuencias y demoras. Dávila Pollock *et al* v. R. F. Mortgage, 182 DPR 86, 94 (2011).

**III.**

En el presente caso, Management Consulting nos solicitó la revocación de la *Resolución* emitida por la Oficina de Planificación mediante la cual se denegó la solicitud de cambio de calificación del suelo en controversia.

Atenderemos, en primer orden, el planteamiento jurisdiccional presentado por la Recurrente. En esencia, ésta sostiene que la Oficina de Planificación erró al emitir la *Resolución* aquí impugnada, puesto que no poseía jurisdicción sobre la controversia, ya que no había recibido el mandato de este Tribunal en el caso KLRA202400674. No nos convence su postura. Veamos.

Surge del expediente ante nuestra consideración que Management Consulting presentó una "**Solicitud de Enmienda al Mapa de Calificación**" con la intención de recalificar cierto solar de distrito residencial tres a distrito comercial liviano. Luego de varios trámites procesales, el 10 de septiembre de 2024 la Oficina de Planificación le envió una misiva a la Recurrente en la que denegó dicha solicitud. Insatisfecho con dicha determinación, el 15 de octubre de 2024 Management Consulting acudió ante este Tribunal mediante recurso de revisión

judicial bajo el alfanumérico KLRA202400574, en el que alegó que la Oficina de Planificación no incluyó las advertencias finales de rigor en su comunicación.

Entretanto, el 30 de octubre de 2024 el Municipio Autónomo de San Juan presentó una *Moción de Desestimación* en la cual admitió que la Oficina de Planificación omitió apercibir a la Recurrente de su derecho a revisión judicial e indicó que se aprestaría a renotificar su determinación, incluyendo dichas advertencias. El 6 de noviembre de 2024, la Junta de Planificación emitió la referida *Resolución* con sus debidas advertencias. Como consecuencia de ello, el día siguiente dictamos *Sentencia* desestimando el mencionado recurso judicial por el mismo haberse tornado académico.

Conforme hemos adelantado en los acápites anteriores, el término mandato hace referencia a las órdenes emitidas por este Tribunal a los foros recurridos, notificándoles la disposición de la sentencia o resolución objeto de revisión. Su objetivo principal es garantizar que el foro primario actúe de acuerdo con los pronunciamientos de este Tribunal de Apelaciones. En lo concerniente a la autoridad de atender controversias, cuando este Tribunal de Apelaciones dicta una sentencia, el foro inferior no puede intervenir hasta que no haya recibido el mandato correspondiente a dicho dictamen.

En este caso, la Recurrente sostiene que la Oficina de Planificación no tenía jurisdicción para emitir la *Resolución* dictada el 6 de noviembre de 2024 porque no había recibido el mandato de este Tribunal en el caso núm. KLRA202400574. Sin embargo, al momento de dictarse la referida *Resolución* no existía una sentencia o resolución de este Tribunal sujeta a la emisión de un mandato. En otras palabras, no había ninguna determinación pendiente de que se remitiera algún mandato de nuestra parte porque en la etapa en la que se encontraban los procedimientos, aún no habíamos emitido ninguna determinación respecto al caso sujeto a revisión. Por consiguiente, la Oficina de Planificación no estaba impedida de subsanar la omisión de advertencias, pues, en ese momento específico, no le habíamos impuesto la obligación de acatar pronunciamiento alguno. Así pues, no se cometió el error señalado.

Habiendo resuelto lo anterior, procedemos a analizar los demás señalamientos de error esgrimidos. Los primeros dos errores se encuentran

íntimamente relacionados, por lo que se tratarán de manera conjunta en la discusión. En resumen, la Recurrente alega que la Oficina de Planificación erró al denegar la "**Solicitud de Enmienda al Mapa de Calificación**" sin haberla evaluado, adjudicado y notificado de manera adecuada. Veamos.

Respecto al proceso de evaluación, adjudicación y notificación de la solicitud de cambio de calificación aquí en controversia, se desprende del expediente lo siguiente: (1) el 15 de julio de 2021, la Oficina de Planificación publicó un aviso en el que especificó que el 3 y 4 de agosto se estarían llevando a cabo vistas públicas con el propósito de considerar dicha petición de reclasificación de suelo, (2) en esa misma fecha, se le comunicó a Management Consulting sobre las vistas y se le indicó que incluyera un rótulo de presentación sobre el terreno, (3) el 4 de agosto de 2024 se llevó a cabo la referida vista, la cual fue presidida por el Lcdo. Fullana Hernandez y la Sra. Mirella Rosa, (4) el 26 de abril de 2024, el Comité Asesor se reunió para evaluar la solicitud de cambio de calificación y (5) el 6 de noviembre de 2024, la Oficina de Planificación emitió una *Resolución* denegando el requerimiento de la Recurrente. En específico, incluyó las siguientes advertencias:

> **Las actuaciones, decisiones o resoluciones de la Junta de Planificación** en el ejercicio de sus funciones cuasi legislativas, tales como la adopción y promulgación de reglamentos y mapas de zonificación, o las enmiendas a los mismos, serán finales, disponiéndose, que en los casos en que la Junta no cumpla con los requisitos estatutarios para la adopción y promulgación, o enmiendas a dichos reglamentos y mapas, **podrá recurrirse ante el Tribunal de Apelaciones, a impugnar el procedimiento seguido, contados a partir de un término de treinta (30) días contados desde que entra en vigor la enmienda**, cónsono con la Ley Número 75 antes citada, y la Ley 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme, según enmendada. Una vez autorizada una enmienda a un Mapa de Zonificación por la Junta, la misma entrará en vigor a los quince (15) días de publicarse un edicto sobre la adopción de enmiendas a los Mapas de Zonificación en un periódico de circulación general en Puerto Rico. Disponiéndose además que podrá radicarse una nueva petición para dicho solar cuando se trate de una solicitud que cumpla con lo estadio en la reglamentación vigente. Específicamente, deberá cumplir con el requisito de no radicar una nueva petición dentro de un término de cinco años, en el cual se incluya esta propiedad, según dispuesto en el Reglamento de Ordenación Territorial del Municipio de San Juan, sección 7.00, subsección 7.02, vigente.[2]

Conforme hemos reseñado, la Ley Núm. 107-2020, *supra*, y el *Convenio* establecen que la Oficina de Planificación del Municipio de San Juan posee la

---

[2] *Véase*, Apéndice del Recurso de Revisión Judicial, pág. 338.

autoridad para evaluar y tomar determinaciones en los cambios de calificación directos. 21 LPRA sec. 7866. En concordancia con ello, la Ley Núm. 161-2009, *supra*, dispone que en los procedimientos de recalificación y variaciones de uso se deben celebrar vistas públicas. 23 LPRA sec. 9018e. De igual manera, el Reglamento Conjunto especifica que luego de examinar una solicitud de cambio de calificación, el Municipio Autónomo con Jerarquía de la II a la III debe emitir una resolución que incluya el acuerdo sobre la enmienda solicitada. Reglamento Núm. 9233, Sección 7.5.5.7.

Por su parte, la notificación adecuada de cualquier dictamen final emitida por un ente administrativo supone la advertencia de lo siguiente: (1) derecho a solicitar reconsideración de la decisión tomada; (2) derecho a solicitar revisión judicial o juicio *de novo*, según sea el caso; y (3) los términos correspondientes para ejercitar dichos derechos. Así pues, el incumplimiento con alguno de estos requisitos resulta en una notificación defectuosa. Maldonado v. Junta Planificación, *supra*, págs. 57-58.

Tras un análisis minucioso del expediente bajo nuestra consideración, incluyendo la "**Solicitud de Enmienda al Mapa de Calificación**", la *Resolución* impugnada y el expediente administrativo ante la Oficina de Planificación, hemos arribado a la conclusión de que esta última llevó a cabo la evaluación, adjudicación y notificación de dicha petición de forma adecuada y conforme a derecho. Esto se evidencia claramente del expediente que hemos revisado, donde consta que el 4 de agosto de 2021 se llevó a cabo una vista pública para discutir el cambio de calificación del solar ubicado en el barrio Monacillos de San Juan, en estricto cumplimiento con lo dispuesto en la Ley Núm. 161-2009, *supra*. Asimismo, la *Resolución* dictada por la Oficina de Planificación incluyó las advertencias pertinentes respecto al derecho a la revisión judicial, el término disponible para así hacerlo, el foro al cual recurrir y la fecha del archivo en autos de su determinación, respetando así el debido proceso de ley de Consulting Management. En consecuencia, se le informó a la Recurrente, de manera clara, que disponía de un término de treinta (30) días, a partir de la notificación de la determinación para acudir en revisión judicial ante este Tribunal de Apelaciones.

Por consiguiente, no se observa ningún defecto en el proceso de evaluación, adjudicación y notificación de la determinación de la mencionada solicitud.

Además, es menester aclarar que el hecho de que la Oficina de Planificación haya permitido la intervención de Crown Hill Asociación de Propietarios, Corp. y que haya incluido determinaciones de hechos y conclusiones de derecho en la *Resolución* aquí impugnada no significa que se le haya vulnerado el derecho a un debido proceso de ley a Management Consulting. Todo lo contrario, lo anterior evidencia que la Recurrida, a pesar de no estar obligada a hacerlo, le otorgó derechos adicionales a la Recurrente, ejerciendo así la discreción que le otorga nuestro ordenamiento jurídico para atender los procedimientos que se ventilan ante sí. Por lo tanto, no se cometieron los errores planteados.

Los últimos dos señalamientos de error también se encuentran íntimamente relacionados, por lo que se discutirán en conjunto. En resumidas cuentas, Management Consulting afirma que la Oficina de Planificación erró al denegar la "**Solicitud de Enmienda al Mapa de Calificación**", puesto que, para llegar a dicha conclusión utilizó como fundamentos meros argumentos, los cuales son contrarios a la evidencia presentada. Además, arguyó que dicha decisión causa que se mantenga una propiedad con una calificación aislada o *spot zoning*. Tampoco nos convence esta postura. Veamos.

Del expediente presentado para nuestro análisis, se desprende que la Oficina de Planificación rechazó la solicitud del cambio de calificación del suelo en controversia, fundamentándose en la existencia de ciertas cláusulas restrictivas en la urbanización, así como en los problemas de seguridad y flujo vehicular creados por los comercios en colindancia al control de acceso. En específico, la Oficina de Planificación expresó lo siguiente:

> Las razones para no recomendar son las siguientes: Las propuestas no están en armonía con lo dispuesto en Ordenanza y el Plan de Ordenación Territorial, donde se establecen las políticas públicas del Municipio Autónomo de San Juan sobre la protección ambiental, el urbanismo, el desarrollo físico y social y la transportación; con el fin de proteger y preservar la integridad y estabilidad del vecindario y zonas residenciales de San Juan de usos incompatibles, evitando crear clasificaciones aisladas. Esta propuesta crearía presión indebida, menoscabo de la infraestructura y establecería un precedente hacia el área residencial en comunidades gravadas por cláusulas restrictivas de servidumbre en equidad, provocando un

efecto adverso en la calidad de vida de los residentes y en los distritos donde ubican, los cuales fueron diseñados para uso residencial.[3]

Tal y como hemos anticipado, los tribunales apelativos estamos llamados a abstenernos de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, *supra*, pág. 281. Esto pues dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, *supra*, pág. 819. Por consiguiente, solamente podemos sustituir el criterio del organismo administrativo por el nuestro en aquellas ocasiones que no se encuentre una base racional que fundamente la actuación administrativa y la parte que impugne la determinación aporte evidencia sustancial que establezca cómo la agencia o el municipio erró en la adjudicación de uno o varios asuntos ante su consideración.

Luego de estudiar detenidamente todos los documentos que forman parte del legajo apelativo y la copia certificada del expediente ante el Municipio, concluimos que no existe base para sustentar la contención de la Recurrente de que la denegación de la "**Solicitud de Enmienda al Mapa de Calificación**" no está respaldada por la prueba ni la evidencia presentada. Contrario a lo argumentado por Consulting Management, el expediente contiene prueba sustancial de la cual se puede concluir que la zona residencial en la que se ubica el solar en cuestión está gravada con cláusulas restrictivas que impiden que la clasificación del terreno cambie de distrito residencial tres a distrito comercial liviano, puesto que dicha alteración podría provocar un efecto adverso en la calidad de vida de los residentes y en los distritos donde se encuentran, los cuales fueron diseñados exclusivamente para uso residencial. Ello se desprende con meridiana claridad de la prueba que consta en el expediente ante nuestra consideración.

Así pues, concluimos expresamente que la Recurrente no aportó evidencia suficiente para derrotar la presunción de corrección de la cual están investidas las decisiones del foro administrativo. En el ejercicio de nuestra función revisora,

---

[3] *Véase*, Apéndice del Recurso de Revisión Judicial, pág. 334.

venimos compelidos a darle deferencia a la especialización, experiencia y las cuestiones propias de la discreción o pericia de las agencias administrativas. Tal y como hemos adelantado, somos de la opinión de que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte del presente dictamen, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones